UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK RHODEHOUSE,<br><br>        Plaintiff,<br><br>   v.<br><br>FORD MOTOR COMPANY and DOES 1 to 20, Inclusive,<br><br>        Defendants. | No.  2:16-cv-01892-JAM-CMK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Plaintiff Derek Rhodehouse ("Mr. Rhodehouse" or "Plaintiff") sued Defendant Ford Motor Company ("Ford") in California state court. ECF No. 1-3. Ford removed the case to federal court, ECF No. 1, and filed a motion to dismiss Mr. Rhodehouse's complaint, ECF No. 6. Mr. Rhodehouse opposes the motion. ECF No. 8. For the reasons discussed below, the Court GRANTS in part and DENIES in part Ford's motion to dismiss and gives Plaintiff leave to amend.[1]

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for October 18, 2016.

1

1          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND
2          In January 2014, Mr. Rhodehouse was injured while riding as
3    a passenger in a 1999 Ford F-350.  First Amended Complaint
4    ("FAC") at 4, ECF No. 6-3.  Mr. Rhodehouse alleges that he was
5    injured when the car rolled over, the roof crushed, and his
6    seatbelt failed.  Id.  Mr. Rhodehouse also alleges that Ford knew
7    that seatbelts in some Ford cars were "unsafe and would unbuckle
8    in an accident."  FAC at 5.  Additionally, Mr. Rhodehouse alleges
9    that Ford knew "that the construction, fabrication, and
10   manufacture of and on the vehicle in which Plaintiff was riding
11   was below standard and that . . . [an] accident would result in
12   the roof crushing down and injuring passengers."  Id.
13         Mr. Rhodehouse filed his suit against Ford in Trinity County
14   Superior Court in January 2015.  Notice of Removal Ex. 1, at 1.
15   Seven months later, Mr. Rhodehouse amended his complaint and
16   served Ford with the FAC.  FAC at 1; Notice of Removal Ex. 1, at
17   11.  Ford removed the case to this Court based on diversity
18   jurisdiction.  Notice of Removal at 2.  A week later, Ford filed
19   a motion to dismiss Mr. Rhodehouse's case based on lack of
20   personal jurisdiction and failure to state a claim.  Mot. to
21   Dismiss at 1.
22
23                            II.   OPINION
24      A.   Legal Standard
25         When a defendant moves to dismiss based on lack of personal
26   jurisdiction, the plaintiff bears the burden of establishing
27   that jurisdiction is proper.  Boschetto v. Hansing, 539 F.3d
28   1011, 1015 (9th Cir. 2008).  "There are two types of personal

                                 2

jurisdiction: general and specific." Ziegler v. Indian River Cty., 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists if the nonresident's contacts with the forum are continuous and systematic, and the exercise of jurisdiction satisfies "traditional notions of fair play and substantial justice." Id.  A court may have general jurisdiction over a defendant even when the claims at issue are not related to the defendant's activity in that forum. Durham v. Halibrand Performance Corp., 2014 WL 12519938, at *1 (S.D. Cal. Dec. 9, 2014). Specific jurisdiction, on the other hand, allows a court "to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court." Id.

    B.   Analysis

        1.   Specific Jurisdiction

Mr. Rhodehouse does not argue that this Court has general jurisdiction over Ford. Rather, Mr. Rhodehouse argues that his injuries arose out of and relate to Ford's forum-related activities. Opp'n at 11.

The Ninth Circuit has set forth a three-part test to determine whether a defendant's contacts with the forum state are sufficient to subject the defendant to specific jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part test, specific jurisdiction exists if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of the forum state's laws; (2) the claims arise out of or result from the defendant's forum-related activities; and (3) the exercise of

jurisdiction is reasonable and comports with fair play and substantial justice. Id. The plaintiff bears the burden of establishing the first two prongs of the test. Royal & Sun All. Ins. Plc v. Castor Transp., LLC, 2016 WL 633443, at *5 (S.D. Cal. Feb. 17, 2016). If the plaintiff successfully establishes the first two prongs, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).

Plaintiff argues that he can establish the first prong because "Ford has very extensive contacts with California." Opp'n at 11. Mr. Rhodehouse asserts that

> Ford advertises extensively in California . . . It sells large quantities . . . of its vehicles in this state. It has offices and employees in this state. It has been qualified to do business in this state since 1922. It has an agent for service of process in this state.

Opp'n at 11.

Ford does not vigorously contest that this first jurisdictional prong has been satisfied. Additionally, another federal court in California determining whether it had specific jurisdiction over Ford "assumed" the first prong was satisfied by "Ford's business presence in California." Sullivan v. Ford Motor Co., 2016 WL 6520174, at *3 (N.D. Cal. Nov. 3, 2016). Given that Ford vehicles saturate California roads and dealerships and that Ford advertisements pervade California media, this Court finds that Ford has purposefully availed itself of the privilege of conducting activities in California.

With respect to the second jurisdictional prong, i.e

4

1  whether the claims arise out of or result from the defendant's
2  forum-related activities, the Ninth Circuit uses a "but for"
3  analysis.  Senne v. Kan. City Royals Baseball Corp., 105 F.
4  Supp. 3d 981, 1004 (N.D. Cal. 2015).  "Under the 'but for' test,
5  'a lawsuit arises out of a defendant's contacts with the forum
6  state if a direct nexus exists between those contacts and the
7  cause of action.'"  In re W. States Wholesale Nat. Gas Antitrust
8  Litig., 715 F.3d 716, 742 (9th Cir. 2013), aff'd sub nom. Oneok,
9  Inc. v. Learjet, Inc., 135 S. Ct. 1591 (2015).  Additionally,
10 "[i]n a specific jurisdiction inquiry, [courts in the Ninth
11 Circuit] consider the extent of the defendant's contacts with
12 the forum and the degree to which the plaintiff's suit is
13 related to those contacts.  A strong showing on one axis will
14 permit a lesser showing on the other."  Yahoo! Inc. v. La Ligue
15 Contre Le Racisme, 433 F.3d 1199, 1210 (9th Cir. 2006).  Thus,
16 "specific jurisdiction might . . . exist as to a defendant with
17 more extensive contacts with the forum even though those
18 contacts are not as closely related to the claims being
19 asserted."  Senne, 105 F. Supp. 3d at 1041.
20      Mr. Rhodehouse argues that his injuries arose out of and
21 relate to Ford's forum-related activities for various reasons.
22 First, Mr. Rhodehouse notes that at the time of his injury,
23 Plaintiff resided in California and the vehicle involved was
24 registered in California.  Opp'n at 11.  Mr. Rhodehouse adds
25 that "Ford's systematic activities in this State make it likely
26 that many of its vehicles sold in other forums will end up
27 owned, registered, and operated in this State."  Id.  Mr.
28 Rhodehouse implies that without Ford's extensive advertising and

5

network of dealerships in California, the truck in which Mr. Rhodehouse was injured would not have been in California. Id.

Ford counters that no specific jurisdiction exists here because "[t]he subject truck was manufactured in Kentucky and sold to an independently-owned dealership in Canada." Reply at 5. Ford argues that the fact that "the vehicle was registered in California and Plaintiff was injured in California is of no import." Id.

Ford cites to several cases from around the country in support of its contentions, arguing that these cases compel this Court to dismiss this case for lack of personal jurisdiction. The Court disagrees.

Ford relies heavily on the Supreme Court case Daimler AG v. Bauman, 134 S.Ct. 746 (2014). In Daimler, the Court held that it violated due process for a California court to exercise general jurisdiction over Daimler, a subsidiary of Mercedes-Benz USA. Id. at 763. But Ford's reliance on Daimler is misplaced. First, Daimler dealt only with general jurisdiction, not specific jurisdiction. Second, Daimler involved "a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States." Id. at 750. Finally, Daimler included this telling footnote:

> Colloquy at oral argument illustrated the respective provinces of general and specific jurisdiction over persons. Two hypothetical scenarios were posed: *First, if a California plaintiff, injured in a California accident involving a Daimler-manufactured vehicle, sued Daimler in California court alleging that the vehicle was defectively designed, that court's adjudicatory authority would be premised on specific jurisdiction. . . .* Second, if a similar accident took place in Poland and injured Polish plaintiffs sued Daimler in California court, the

6

question would be one of general jurisdiction. Id. at 754 n.5 (emphasis added). This footnote expressly contemplates the situation here. Mr. Rhodehouse, California resident, was injured in a California accident while riding in a vehicle manufactured by Ford. The Daimler footnote thus suggests that this Court may exercise specific jurisdiction over Ford.

Ford also cites Cahen v. Toyota Motor Corp., 147 F. Supp. 3d 955 (N.D. Cal. 2015), where the court found it did not have personal jurisdiction over Ford. Mot. at 7. But, in Cahen, the plaintiffs did "not address or oppose Ford's contention that specific jurisdiction does not lie here." Cahen, 147 F. Supp. 3d at 962. Additionally, the Cahen court summarized its finding regarding lack of specific jurisdiction, stating that "[i]n short, the Ford plaintiffs bring solely Oregon and Washington causes of action stemming from transactions that occurred in those states." Id. The court also noted that the plaintiffs did not reside in California. Id. Here, unlike in Cahen, the events giving rise to this suit occurred in a Ford vehicle in California.

Ford next cites to Pitts v. Ford Motor Co., 127 F. Supp. 3d 676 (S.D. Miss. 2015). In Pitts, the accident occurred in Mississippi, but the plaintiffs did not reside in Mississippi, and there was no evidence that the car was registered in Mississippi. Id. at 679-80. Pitts, therefore, is not directly analogous to Mr. Rhodehouse's case. Even if Pitts were directly analogous, Pitts was not necessarily correct in its ruling. The Supreme Court of Appeals of West Virginia expressly disagreed with the Pitts holding, stating that it "unreasonably limits

7

1    state authority." State ex rel. Ford Motor Co. v. McGraw, 788
2    S.E.2d 319, 343 (W.Va. 2016).  The McGraw court also
3    "[d]ecline[d] to use the place of sale as a per se rule to
4    defeat specific jurisdiction." Id.
5        Despite citing a litany of non-binding cases, Ford ignores
6    Plaintiff's arguments in his opposition concerning an
7    instructive and binding Supreme Court case: J. McIntyre
8    Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780 (2011).  In
9    McIntyre, the Supreme Court held that a New Jersey court could
10   not exercise personal jurisdiction over an English machine
11   manufacturer.  Id. at 2791.  Justice Breyer's controlling
12   concurrence (joined by Justice Alito) provided the narrowest
13   grounds for the decision.  Justice Breyer stated that he agreed
14   with Justice Kennedy's plurality opinion only to the extent that
15   it held that New Jersey could not exercise jurisdiction over the
16   specific defendant.  McIntyre, 131 S.Ct. at 2794(Breyer, J.,
17   concurring in the judgment).  Justice Breyer disagreed with the
18   lower court's bright-line rule that "a producer is subject to
19   jurisdiction for a products-liability action so long as it
20   'knows or reasonably should know that its products are
21   distributed through a nationwide distribution system that *might*
22   lead to those products being sold in any of the fifty states.'"
23   Id. at 2793 (emphasis in original).  But Justice Breyer also
24   disagreed "with the plurality's seemingly strict no-jurisdiction
25   rule." Id.
26       Justice Breyer's concurrence in McIntyre contemplates a
27   rule that considers the size of the defendant manufacturer's
28   business.  He stated:

8

> What might appear fair in the case of a large manufacturer which specifically seeks, or expects, an equal-sized distributor to sell its product in a distant State might seem unfair in the case of a small manufacturer who sells his product exclusively to a large distributor, who resells a single item to a buyer from a distant State.

Id. (parentheticals omitted).  Justice Breyer continued, "[i]t may be that a larger firm can readily 'alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state." Id. at 2794 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Justice Breyer's opinion clearly expresses a concern of requiring a small manufacturer to litigate a case in a forum to which the small manufacturer has no connection. At the same time, the opinion also implies that it would not be fundamentally unfair to require a large manufacturer such as Ford to be required to respond in the chosen forum in a products liability action initiated by a plaintiff such as Mr. Rhodehouse who is allegedly injured in one of the manufacturer's primary consumer markets. As Plaintiff argues, the Supreme Court's divided opinion in McIntyre suggests that a Supreme Court majority would find that exercising jurisdiction here does not violate due process.

Ford has strong and pervasive connections to California, i.e. Ford "specifically seeks, or expects" to sell its cars in California.  In light of these strong connections, the fact that the accident injured a California resident and occurred in the state of California in a California-registered vehicle

9

1  sufficiently establishes a nexus between Ford's contacts with
2  California and Mr. Rhodehouse's claims. The Court therefore
3  finds that Plaintiff has established the second prong of the
4  Ninth Circuit's three-part test for jurisdiction.
5       As to the third prong, Ford does not argue that it would be
6  "unreasonable" for this Court to exercise jurisdiction over
7  Ford.
8       In summary, applying Supreme Court and Ninth Circuit
9  precedent to the facts of this case demonstrates that exercising
10 specific jurisdiction over Ford in this case comports with due
11 process. The Court limits its holding specifically to the facts
12 of this case and this opinion should not be read to suggest that
13 California courts have general jurisdiction over Ford or that as
14 a general principle of law a California court can assert
15 specific jurisdiction over Ford in a case involving an accident
16 that did not occur in California.
17            2.    Failure to State a Claim
18      Ford argues that Mr. Rhodehouse's FAC fails under Rule
19 12(b)(6) in its entirety. As to Mr. Rhodehouse's first cause of
20 action for strict products liability, Ford argues that Mr.
21 Rhodehouse "fails to even specify whether the alleged defect is a
22 manufacturing or design defect." Mot. at 11. But Plaintiff
23 alleges both design and manufacturing defects. See FAC at 4,
24 ¶ L-4(b) (indicating that Ford "designed and manufactured
25 component parts" of the vehicle). Plaintiff also indicates the
26 allegedly defective parts of the vehicle: the roof and the
27 seatbelts. Id. at 4-5. Mr. Rhodehouse has sufficiently pled a
28 strict products liability claim.

Mr. Rhodehouse also brings negligence and breach of warranty claims. FAC at 4. Because the FAC does not support these claims with any facts, the Court dismisses both claims with leave to amend.

### III. SANCTIONS

The Court issued its Order re Filing Requirements ("Order") on August 11, 2016. ECF No. 3-2. The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen pages and reply memoranda in support of motions to dismiss to five pages. The Order also states that an attorney who exceeds the page limits must pay monetary sanctions of $50.00 per page and that the Court will not consider any arguments made past the page limit. Ford's reply memorandum exceeds the page limit by five pages. The Court therefore orders Ford's counsel to pay $250.00 in sanctions to the Clerk of the Court within five days of the date of this Order.

### IV. ORDER

For the reasons set forth above, the Court GRANTS IN PART without prejudice AND DENIES IN PART Defendant's Motion to Dismiss. Plaintiff must file his amended complaint within twenty days of the date of this Order. Defendant's responsive pleading shall be filed 20 days thereafter.

IT IS SO ORDERED.

Dated: December 2, 2016

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE