UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| DEREK RHODEHOUSE,<br><br>        Plaintiff,<br><br>  v.<br><br>FORD MOTOR COMPANY and DOES 1 to 20, Inclusive,<br><br>        Defendants. | No. 2:16-cv-01892-JAM-CMK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
|---|---|

Plaintiff Derek Rhodehouse ("Plaintiff" or "Rhodehouse") was a passenger in a Ford F-350 truck which hit a patch of ice, skid off the road, crashed into a tree, and rolled over. The passenger side roof caved in during the rollover crash. Rhodehouse seeks damages against Defendant Ford Motor Company ("Defendant" or "Ford") for injuries sustained from the accident. Rhodehouse brings two causes of action against Ford: (1) strict products liability for alleged design defects in the truck's roof (roof strength) and its handling and steering (rollover propensity); and (2) negligence for the same alleged defects.

///

///

1

Ford moves for summary judgment on both claims. Mot., ECF No. 36. Rhodehouse opposes the motion. Opp'n, ECF No. 55. The Court held a hearing on the motion on October 16, 2018.

For the reasons set forth below, and after consideration of the arguments made during the hearing and all papers filed in support of and in opposition to the motion, the Court GRANTS Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2014, Rhodehouse was injured while riding as a passenger in a 1999 Ford F-350. Second Am. Compl. ("SAC"), ECF No. 16, at 4. The truck hit a patch of ice causing it to leave the roadway and proceed down uneven terrain where it then struck a tree and rolled over. Reply Statement of Facts, ECF No. 55-1, ¶ 21. Rhodehouse claims that when the car rolled over, the roof crushed into the passenger compartment and as a result he sustained serious neck and back injuries. SAC at 4. Rhodehouse brings causes of action for negligence and strict products liability related to two alleged design defects in the 1999 Ford F-350: "an unreasonably weak roof structure" and "a high propensity to roll over." Id. at 5.

Plaintiff hired expert witness Dr. Nicholas Perrone ("Dr. Perrone") to opine on potential design defects with the truck and their impact on the accident and injuries sustained by Rhodehouse. Perrone Report, ECF No. 36-6. Dr. Perrone concluded that the "subject 1999 Ford F350 pickup truck vehicle had an incredibly weak roof structure combined with a high propensity to rollover" which were "major factors in the rolling over and roof

crushing inward and directly causing Derek Rhodehouse's serious debilitating injuries." Perrone Report at 5.

Ford filed a motion seeking to exclude Dr. Perrone's expert testimony. ECF No. 37. In a separate Order filed concurrently in this case, the Court has granted in part and denied in part Ford's motion.

**II. OPINION**

A. Legal Standard

1. California Substantive Law Applies

Federal district courts sitting in diversity apply state law to products liability claims. Stilwell v. Smith & Nephew, 482 F.3d 1187, 1193-94 (9th Cir. 2007).

Under California law, a plaintiff may seek recovery in a products liability case on either, or both, the theory of strict liability or the theory of negligence. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 478 (Cal. 2001). Under either theory, the plaintiff must prove that a defect in the product caused injury. Merrill, 26 Cal. 4th at 478-479. In addition, to establish a negligence theory, a plaintiff must prove that the defect in the product was due to the defendant's negligence. Id.

On this motion, the Court must determine whether, viewing the evidence in the light most favorable to Plaintiff, sufficient evidence has been presented upon which a reasonable jury could return a verdict in Plaintiff's favor on his theories of strict liability and negligence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

### 2. Strict Liability

Under California law, strict liability is not absolute liability. Daly v. Gen. Motors Corp., 20 Cal. 3d 725, 733 (Cal. Ct. App. 1978) ("As has been repeatedly expressed, under strict liability the manufacturer does not thereby become the insurer of the safety of the product's user."). A legal framework applies.

The California Supreme Court has set out two alternative tests for identifying a design defect in a strict products liability action: the consumer expectations test and the risk-benefit test. Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 418 (Cal. 1978). A plaintiff may succeed by proving either theory; the tests are not mutually exclusive. McCabe v. Am. Honda Motor Co., 100 Cal. App. 4th 1111, 1121 (Cal. Ct. App. 2002).

#### a. Consumer Expectations Test

The "consumer expectations test" requires the plaintiff to prove that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Barker, 20 Cal. 3d at 418. This test disfavors expert testimony, and asks instead whether a layperson's "common experience" would indicate that the product was defective. Campbell v. Gen. Motors Corp., 32 Cal. 3d 112, 125 (Cal. 1982).

#### b. Risk-Benefit Test

In contrast, California courts apply the "risk-benefit test" where the factual scenario is "sufficiently beyond common experience that the opinion of an expert is required." Campbell,

32 Cal. 3d at 124; Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 570-571 (Cal. 1994). Under the risk-benefit test, a product may be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish that the benefits of the challenged design, when balanced against factors including the feasibility and cost of alternative designs, outweigh its inherent risk of harm. Barker, 20 Cal. 3d at 432; McCabe, 100 Cal. App. 4th at 1121; Soule, 8 Cal. 4th at 562 (holding that a product has a design defect "if its design embodies excessive preventable danger").

     c. Risk-Benefit Test Applies

  The California Supreme Court has held that "the consumer expectations test is reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective *regardless of expert opinion about the merits of the design.*" Soule, 8 Cal. 4th at 567 (Cal. 1994) (emphasis in original). "The critical question in assessing the applicability of the consumer expectation test is not whether the product, when considered in isolation, is beyond the ordinary knowledge of the consumer, but whether the product, *in the context of the facts and circumstances of its failure*, is one about which the ordinary consumers can form minimum safety expectations." McCabe, 100 Cal. App. 4th at 1124 (emphasis in original).

  The defects alleged in this action are beyond the common experience of ordinary consumers when viewed in the context of the specific circumstances of this one-car rollover collision.

Therefore, the consumer expectations test does not apply and expert testimony is required for Rhodehouse to prove his case. Dr. Perrone is Rhodehouse's only expert on roof strength and rollover propensity, and plaintiff's case rests precariously on his opinions.[1]

### 3. Causation

Under California law, causation is a necessary element of a design defect claim. Soule v. General Motors Corp., 8 Cal. 4th 548, 560 (Cal. 1994). To meet this legal causation burden, the plaintiff must prove that the alleged design defect was a "substantial factor" in causing his injuries and that "but for" the defect, he would not have been harmed. See Endicott v. Nissan Motor Corp., 73 Cal. App. 3d 917, 926-927 (Cal. Ct. App. 1977). Conduct is not a substantial factor in causing harm if the same harm could have occurred without that conduct. Endicott, 73 Cal. App. 3d at 926 ("If the violence of a crash is the effective efficient cause of plaintiff's injuries to the extent that it supersedes other factors such as defective design and makes them immaterial, plaintiff cannot recover.").

### B. Seatbelt Defect

In the Second Amended Complaint, Plaintiff alleges that his "seat belt failed to hold [him] in a safe position, or protect

---

[1] See Mot. to Substitute Byron Bloch as Replacement Expert, ECF No. 35-1, at 3 ("Dr. Perrone is Plaintiff's only expert on auto safety liability . . . If Plaintiff is not allowed to substitute Byron Bloch as an expert, Plaintiff will be unable to produce any expert to testify at trial and will lose this case by default."). The Court denied Plaintiff's Motion to Substitute insofar as Mr. Bloch is not permitted to give supplemental expert testimony. See Minute Order re Mot. to Substitute, ECF No. 46.

him from further injuries resulting from his striking the interior of the [truck] or from falling from or being ejected from the [truck] in the event of an accident." SAC at 4. Plaintiff has since abandoned this seatbelt defect claim. Opp'n at 5 ("Plaintiff is not making defective seat belt allegations."). Plaintiff now admits that he was not wearing a seatbelt at the time of the crash. Reply Statement of Facts, ¶ 32.

Because Rhodehouse was not wearing a seatbelt at the time of the crash, no defect in the seatbelt could have caused his injury. As such, the claim fails as a matter of law. Daly v. Gen. Motors Corp., 20 Cal. 3d 725, 733 (Cal. 1978) ("[T]he plaintiff's injury must have been caused by a 'defect' in the product.").

### C. Roof Strength Defect

Ford contends that Plaintiff has not proposed a feasible, alternative roof design that would have prevented his injury had it been used. Mot. at 21. On this point, Rhodehouse relies on Dr. Perrone's expert testimony that the roof strength of the 1999 F-350 "could have been readily enhanced by making the [roof rail] members closed sections" or by increasing the thickness of the roof's materials, and such improvement may have cost only $50 per vehicle. Perrone Report at 8.

The Court has excluded Dr. Perrone's expert testimony as to alternative roof design. Defendant's expert Michelle Vogler provided a reliable opinion as to the lack of defectiveness of the roof design in light of the relevant factors. Vogler Report, ECF No. 36-11, at 7. Thus, Plaintiff has not raised a dispute of

material fact that there was a feasible, safer, alternative design for the roof and Plaintiff's roof strength defect claim fails as a matter of law.[2]

D. <u>Rollover Propensity Defect</u>[3]

Ford argues that Rhodehouse cannot show that a handling and steering defect (rollover propensity) in the 1999 F-350 was a substantial factor in causing Plaintiff's injuries. Mot. at 16-17. First, Ford argues that the icy conditions on the road, not the truck's rollover propensity, led to the crash. Mot. at 17-18; Ford Statement of Facts, ECF No. 36-1, ¶ 34. Second, Ford argues that no facts demonstrate the truck has an unreasonable propensity to roll over; rather the collision with the tree caused the truck to roll over. Mot. at 17; Ford Statement of Facts ¶ 22. Third, Ford contends that after-market modifications to the vehicle increased the vehicle's propensity to rollover. Mot. at 17-18; Ford Statement of Facts ¶¶ 45-47.

Rhodehouse's opposition again rests on Dr. Perrone's expert testimony that the truck's alleged high rollover propensity was a defect, and that defect caused Rhodehouse's injuries. Rhodehouse Reply Statement of Facts ¶¶ 92-93. The Court found Dr. Perrone's testimony as to the concept of Static Stability Factor reliable. But, Dr. Perrone testified that the SSF *itself* was not a defect

---

[2] The Court has also excluded Dr. Perrone's opinion that Plaintiff's injury would not have occurred but for the defective roof. As a matter of law, Plaintiff cannot carry his burden of proof on proximate cause for this claim.

[3] Plaintiff acknowledges that the roof strength defect allegation, not the rollover propensity defect allegation, is Plaintiff's "primary argument." Opp'n at 6. Indeed, Plaintiff spends only two sentences arguing the handling and steering defect allegations in its opposition brief. <u>Id.</u>

and did not bother him. Perrone Dep. Tr. At 163:9-164:6, ECF No. 36-4. However, the Court has excluded Dr. Perrone's opinion that the injury resulted from the vehicle's rollover propensity. Further, Rhodehouse admits that the accident may not have occurred had the road not been icy or had the driver engaged four-wheel drive. Reply Statement of Facts ¶¶ 34-35.

The undisputed facts, taken together with the exclusion of Dr. Perrone's expert testimony on this claim, do not provide a sufficient basis for a jury to find that the alleged rollover propensity of the truck was a substantial factor in causing Plaintiff's injury. See Stephen v. Ford Motor Co., 134 Cal. App. 4th 1363, 1372-73 (Cal. Ct. App. 2005) (finding expert's testimony inadequate to establish dispute of material fact as to proximate cause where expert had failed to examine allegedly defective product and rule out alternative causes). Defendant's motion for summary judgment on the strict liability claim is granted.

### E. Negligence

To prove negligence for a defective design, the plaintiff must prove the existence of a design defect, that the defect caused the injury, and that the defect in the product was due to the defendant's negligence. Demara v. The Raymond Corp., 13 Cal. App. 5th 545, 557 (Cal. Ct. App. 2017) ("Whether alleged as a strict liability claim or a negligence claim, a plaintiff must first establish the existence of a defective design."); Bigbee v. Pac. Tel. & Tel. Co., 34 Cal. 3d 49, 54 n. 4 (Cal. 1983) (holding that where a negligence claim does not differ from an underlying products liability claim, the inquiry into causation for both

causes of action can occur simultaneously).

Based on the arguments presented in this case, the Court's findings on summary judgment as to the strict products liability claim apply with equal force to the negligence claim. Summary judgment on this cause of action is, therefore, also granted in Defendant's favor.

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment. The pretrial conference and trial dates previously set in this case are vacated.

IT IS SO ORDERED.

Dated: October 29, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE