UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK RHODEHOUSE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY and DOES 1 to 20, Inclusive,<br><br>　　　　　Defendants. | No. 2:16-cv-01892-JAM-CMK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFDENTANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, DR. NICHOLAS PERRONE** |

Defendant Ford Motor Company ("Defendant" or "Ford") moves to exclude the testimony of Plaintiff's expert witness Dr. Nicholas Perrone ("Dr. Perrone"). Mot., ECF No. 37. Plaintiff Derek Rhodehouse ("Plaintiff" or "Rhodehouse") opposes the motion. Opp'n, ECF No. 56. The Court held a hearing on the motion on October 16, 2018.

For the reasons set forth below, and after consideration of the arguments made during the hearing and all papers filed in support of and in opposition to the motion, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

///

///

1

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In January 2014, Rhodehouse was injured while riding as a passenger in a 1999 Ford F-350. Second Am. Compl. ("SAC"), ECF No. 16, at 4. The truck hit a patch of ice causing it to leave the roadway and proceed down uneven terrain where it then struck a tree and rolled over. Rhodehouse alleges that when the car rolled over, the roof crushed into the passenger compartment and as a result he sustained serious neck and back injuries. SAC at 4. Rhodehouse brings causes of action for negligence and strict products liability related to two alleged design defects in the 1999 Ford F-350: "an unreasonably weak roof structure" and "a high propensity to roll over." Id. at 5.

Rhodehouse hired expert witness Dr. Nicholas Perrone to opine on potential design defects with the truck and their impact on the accident and injuries sustained by Rhodehouse. Perrone Report, ECF No. 37-7. Dr. Perrone concluded that the "subject 1999 Ford F350 pickup truck vehicle had an incredibly weak roof structure combined with a high propensity to rollover" which were "major factors in the rolling over and roof crushing inward and directly causing Derek Rhodehouse's serious debilitating injuries." Perrone Report at 5. Dr. Perrone supplemented his report twice. Perrone Supplemental Report I, ECF No. 56-2 at 123-132; Perrone Supplemental Report II, ECF No. 56-2 at 133-139.

In July 2018, Plaintiff moved to substitute Byron Bloch, another automotive safety liability expert, for Dr. Perrone. Mot. to Substitute Byron Bloch as Replacement Expert, ECF No. 35-1. Dr. Perrone is unable to testify at trial due to his declining health. Id. The Court heard the motion to substitute

on September 18, 2018 and ordered that Mr. Bloch could be substituted strictly to stand in Dr. Perrone's shoes (i.e., to have a body at trial). See Minute Order re Mot. to Substitute, ECF No. 46. If he is to testify, Mr. Bloch must adopt Dr. Perrone's reports and opinions without supplementation. Id.

Mr. Bloch submitted a declaration in support of Plaintiff's opposition to the present motion. Bloch Decl., ECF No. 56-1. In its reply brief, Ford requests the court exclude Mr. Bloch's expert testimony. Reply, ECF No. 62, at 5.

**II. OPINION**

A. The Motion is Ripe

Rhodehouse argues that Ford failed to comply with the Court's meet and confer requirement prior to filing this motion. Opp'n at 1; ECF No. 3-2. Rhodehouse further contends that the Court must hold an evidentiary hearing (i.e., "Daubert hearing") prior to deciding this motion. Opp'n at 1-2.

Both arguments are unpersuasive. First, the Court finds that Ford complied with the Court's meet and confer requirement prior to filing this motion. This motion is not a surprise to Rhodehouse. Second, an evidentiary hearing is not required prior to ruling on a motion to exclude expert testimony. See, e.g., United States v. Lopez-Martinez, 543 F.3d 509, 514 (9th Cir. 2008) (holding that conducting a hearing on a Daubert motion is not required under Federal Rule of Evidence 702, nor under "Supreme Court precedent or [Ninth Circuit] case law"). The record is sufficient for the Court to rule on the present motion.

3

1  B. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, a witness qualified as an expert may testify thereto if: "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The trial court acts as a gatekeeper to the admission of expert testimony under Rule 702. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). The court must conduct a preliminary assessment to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. The relevancy bar is low, demanding only that "[t]he evidence . . . logically advance a material aspect of the party's case." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007). The reliability inquiry is "a flexible one" and the court looks to whether the testimony has "a reliable basis in the knowledge and experience of [the expert's] discipline." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148-149 (1999). The court is concerned "not [with] the correctness of the expert's conclusions but the soundness of his methodology." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010).

"When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony." Primiano, 598 F.3d at 565.

C.  Dr. Perrone's Qualifications

As a threshold matter, an expert must be qualified by his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Ford has not challenged Dr. Perrone's qualifications as an expert on vehicle rollover propensity and roof strength. From its review, the Court finds Dr. Perrone is qualified to provide expert testimony on these topics.

D.  Relevance of Dr. Perrone's Testimony

Rhodehouse alleges that two design defects in the Ford F-350 – a susceptibility to rollover and a weak roof – contributed to the crash and Plaintiff's injuries. See SAC. Vehicle roof strength and susceptibility to rollover are matters beyond the common experience of lay people. See Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 564-567 (Cal. 1994). Because Dr. Perrone's testimony could assist the trier of fact in determining whether the alleged defects existed and caused Plaintiff's injury, Dr. Perrone's testimony is relevant.

E.  Reliability of Dr. Perrone's Testimony

Dr. Perrone provides opinions regarding (1) accident reconstruction, (2) rollover propensity, (3) roof strength, (4) alternative roof design, (5) biomechanical causation, (6) Ford's knowledge, and (7) foreign vehicle roof strength.

As detailed below, the Court finds as reliable and based on sufficient evidence, and therefore will not exclude, Dr. Perrone's opinions regarding: accident reconstruction, rollover propensity, roof strength, and the correlation between roof strength and injury in rollover accidents. For these opinions, the Court finds that Ford's arguments generally go to the weight

to be accorded to Dr. Perrone's testimony by the factfinder, rather than admissibility.

On the other hand, the Court finds as unreliable, and therefore excludes, Dr. Perrone's opinions that: Ford could have improved roof strength of the Ford F-350 for a nominal sum and the injury in this case would have been prevented by a stronger roof; the injury resulted from the vehicle's rollover propensity, that Ford had knowledge of roof strength and rollover issues, and foreign vehicles have stronger roofs than domestic vehicles.

### 1. Opinions Not Excluded

#### a. Accident Reconstruction

Dr. Perrone opines that Mr. Rhodehouse "sustained his spinal injuries from the massive roof collapse" wherein the roof crushed in 20 inches from a rollover at a velocity of less than 25 MPH. Perrone Report at 4. Ford argues that Dr. Perrone's accident reconstruction opinion should be excluded because it is based solely on third-party photographs, information provided to him by Plaintiff, or the estimates in the Traffic Collision Report. Mot. at 7-9.

While Dr. Perrone did not personally visit the crash site, he still relied on sufficient facts and data in reviewing, among other things, the Traffic Collision Report prepared by the California Highway Patrol as well as numerous photographs of the truck after the crash. See Perrone Report at 2-3. Federal Rule of Evidence 703 expressly allows experts to rely on facts and data collected by others to form their opinions. Fed. R. Evid. 703; see, e.g., Southland Sod Farms v. Stover Seed Co., 108 F.3d

1134, 1141-42 (9th Cir. 1997).

### b. Rollover Propensity

In his report, Dr. Perrone discusses the concept of Static Stability Factor (SSF), which is a correlation between a vehicle's width (track width) and height (center of gravity). Perrone Report at 6-7. Dr. Perrone calculated the Ford F-350 "to have an SSF of 1.14 resulting in a 30% rollover probability in a single vehicle accident (like the subject case)" making it "about three times more likely to roll over in a single vehicle accident than full sized passenger cars." Id. at 7.

Dr. Perrone relied on sufficient facts and data in supplying this opinion. Dr. Perrone need not have investigated the suspect truck to opine on the ratio between the width and height of F-350s *generally*. Moreover, the SSF appears to be a widely accepted rollover propensity measure with the National Highway Traffic Safety Administration (NHTSA) having developed a star rating system based largely on the metric. Perrone Report at 6. The SSF concept is reliable.

### c. Roof Strength and its Correlation

Dr. Perrone discusses roof strength in terms of a strength-to-weight ratio ("W"). Perrone Report at 5-6. Dr. Perrone calculated the 1999 F-350's roof strength-to-weight ratio to be 1.7W. Perrone Report at 6. He opines that the 1.7W roof strength was well below the 3.5W level recommended by Cornell labs in 1959 and below the new 2009 NHTSA standard. Id. at 10.

Ford does not seem to argue the W score itself is unreliable. In fact, the W score has multiple indicia of reliability, including its use by the NHTSA and other vehicle

7

safety test groups.  Instead, Ford merely argues that Dr. Perrone's application of the score is improper, an argument which goes to the weight of Dr. Perrone's testimony to the fact-finder, not to its admissibility.  The concept of strength-to-weight ratio is reliable.

        2.    Opinions Excluded

              a.    Alternative Roof Design

Dr. Perrone writes that the roof strength of the 1999 F-350 could have been "readily enhanced by making the [roof rail] members closed sections" or by increasing the thickness of the roof's materials.  Perrone Report at 8.  Dr. Perrone notes that the "NHTSA indicated in the previous FMVSS 216 exercise of 2005 it would cost on average $50.00 per vehicle to double the roof strength requirement from 1.5W to 3W."  Id.  Ford points out that Dr. Perrone admitted he does not know the strength or thickness of the materials Ford actually used, or whether the 1999 F-350's roof has open or closed section roof members.  Mot. at 5-6.

Dr. Perrone identifies no basis on which this opinion rests. Dr. Perrone does not know how the roof of the F-350 was structured, nor if it was possible for the truck to have been made with a stronger roof, or for what exact price.  Dr. Perrone's opinion in this context is conjecture and must be excluded.

              b.    Biomechanical Causation

Dr. Perrone opines that Rhodehouse sustained his spinal injuries from the "massive roof collapse" which resulted from the rollover.  Perrone Report at 4.  Dr. Perrone writes that the F-350's rollover propensity was "well less than adequate" and

that "if the F350 had been designed to not easily roll over, Derek Rhodehouse would not have had his serious neck and back vertebral injuries." Id. at 7. Next, Dr. Perrone states that, generally, "there is a definite correlation between roof crush and injury to occupants under the crushed roof during rollovers." Id. at 8. Dr. Perrone further opines that "even with the poor stability characteristics of the vehicle, with a proper minimum [roof strength] there would not have been any significant intrusion in his accident and Derek Rhodehouse would have had no serious residual injuries." Id. at 10.

Ford argues that any scientific methodology to support these claims is entirely lacking. Mot. at 10. Ford takes issue with the fact that based only on a review of select medical records and photos of the F-350 taken well after the truck had been removed from the scene, Dr. Perrone concludes that the nature of the Plaintiff's injury suggests he was under the roof as it was collapsing. Id. at 10-11. Ford also argues that Dr. Perrone's testimony that a neck injury would not have occurred with a strongly reinforced roof is unsupported by reliable studies. Id. at 13. Additionally, Ford contends that Dr. Perrone has no basis for his testimony that the truck, which veered off the road and struck a tree, would not have rolled over but for its low SSF. Id. at 8.

While Dr. Perrone's opinion that roof crushes are *generally* associated with injury is supported and reliable, Dr. Perrone's other biomechanical causation opinions are not reliable.

Dr. Perrone proffers no adequate scientific basis for his opinion that the injury would have been prevented had the roof

9

been stronger.  Dr. Perrone in fact testified that an injury could occur in a rollover accident even when the roof does not deform.

Moreover, Dr. Perrone's opinion that Rhodehouse would not have been injured if the truck been more stable is unsubstantiated and unreliable.  Dr. Perrone conducted no scientific analysis of the crash forces and plethora of factors which could have caused the crash and rollover.[1]  Nor did Dr. Perrone make any attempt to account for the effect of the potential after-market modifications on the truck, which he admitted could have made the truck more vulnerable to rollover.

### c. Ford's Knowledge and Foreign Vehicles

Dr. Perrone states that Ford had knowledge of the roof strength and rollover issues for decades and did nothing to improve the design of its vehicles.  Perrone Report at 11-12; Perrone Supplemental Report I at 3-4; Perrone Supplemental Report II at 3.  Dr. Perrone also opines that foreign-made vehicles have stronger roofs than domestic vehicles and that the American auto industry is in jeopardy due to this imbalance. Perrone Supplemental Report I at 5-6; Perrone Supplemental Report II at 4.

These opinions are not based on reliable, scientific information or studies.  Indeed, there is no explanation provided by Dr. Perrone as to the underlying scientific bases for these opinions.  In the absence of any such facts or data,

---

[1] Dr. Perrone actually writes that "the right front [of the truck made] contact with a tree which caused it to change its direction and go into a full 360 degree single lateral rollover with driver side leading."  Perrone Report at 4.

10

these opinions must be excluded.

F. <u>Mr. Bloch's Declaration</u>

Pursuant to the Court's order, Mr. Bloch was only to adopt Dr. Perrone's reports and opinions, and provide no supplementation. See ECF No. 46. His role is limited solely to serving as a body at trial to testify in place of Dr. Perrone. <u>Id.</u>

Contrary to the Court's order, Mr. Bloch's declaration provides expert testimony that goes well beyond Dr. Perrone's testimony. For example, unlike Dr. Perrone, Mr. Bloch examined an exemplar F-350, provided illustrations of how the roof buckled, points out other defects not discussed by Dr. Perrone, and rebuts Ford's experts' testimony. Bloch Decl. at 2-4. Ford's request to strike Mr. Bloch's declaration was granted at the October 16 hearing. That Order is reaffirmed.

### III. ORDER

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Dr. Nicholas Perrone, ECF No. 37. The Court further excludes the Declaration of Byron Bloch, ECF No. 56-1.

IT IS SO ORDERED.

Dated: October 29, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE